IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID STINEBECK,                        )  Civil Action
                                        )  No. 06-CV-01883
                Plaintiff               )
                                        )
        vs.                             )
                                        )
SALVATORE CUTRONA, SR. and              )
ALBRIGHT COLLEGE, a Pennsylvania )
Nonprofit Corporation,                  )
                                        )
                Defendants              )

                        *    *    *

APPEARANCES:

        E. DANIEL LARKIN, ESQUIRE
            On behalf of Plaintiff

        JOSEPH D. MANCANO, ESQUIRE
            On behalf of Defendant Salvatore Cutrona Sr.

        ALFRED J. D'ANGELO, JR., ESQUIRE
        JOSEPH P. SIRBAK, II, ESQUIRE
            On behalf of Defendant Albright College

                        *    *    *


                M E M O R A N D U M

JAMES KNOLL GARDNER,
United States District Judge


        This matter is before the court on Defendants' Joint

Motion for Summary Judgment, which motion was filed August 29,

2007.  Plaintiff's Brief in Opposition to Defendants' Joint

Motion for Summary Judgment was filed September 18, 2007.  For

the reasons expressed below, I grant in part, and deny in part,

Defendants' Joint Motion for Summary Judgment.

Specifically, I conclude that there are genuine issues of material fact whether defendant Albright College breached plaintiff's employment contract by terminating his employment as Provost, Vice President of Academic Affairs and Academic Dean of the college, as alleged in Count I of plaintiff's Amended Complaint.  I further conclude that there are no genuine issues of fact regarding whether Albright College breached a contract with plaintiff by failing to complete a performance assessment of plaintiff regarding his duties as Interim President of the college, as alleged Count III.

Finally, I conclude that there are no genuine issues of material fact concerning whether defendant Salvatore Cutrona, Sr. tortiously interfered with any existing or prospective contractual relations of plaintiff, as alleged in Counts II, IV and V of plaintiff's Amended Complaint.

<u>JURISDICTION</u>

Jurisdiction in this action is based on diversity of citizenship.  <u>See</u> 28 U.S.C. § 1332.  Plaintiff David Stinebeck is a resident of the Commonwealth of Massachusetts.  Defendant Salvatore Cutrona Sr. is a resident of the Commonwealth of Pennsylvania.  Defendant Albright College is a Pennsylvania nonprofit corporation.  The amount in controversy is in excess of $75,000.

<u>VENUE</u>

Venue is proper because plaintiff alleges that the facts and circumstances giving rise to the causes of action occurred in Berks County, Pennsylvania which is within this judicial district.  28 U.S.C. §§ 118, 1391.

<u>PLAINTIFF'S CLAIMS</u>

On August 7, 2006 plaintiff David Stinebeck filed a five-count Amended Complaint against defendants Salvatore Cutrona, Sr. and Albright College.  Plaintiff's Amended Complaint is the operative pleading in the case.

Count I alleges a cause of action for breach of contract against defendant Albright College for the termination of plaintiff's employment contract as college Provost, Vice President of Academic Affairs and Academic Dean.  Count II avers a cause of action against defendant Salvatore Cutrona, Sr. for tortious interference with contract by causing the termination of plaintiff's employment contract by Albright College.

Count III is a separate cause of action for breach of contract by plaintiff against defendant Albright College for failure to conduct a performance assessment of plaintiff as Interim President of the college.  Count IV asserts a cause of action for tortious interference with contract by defendant Salvatore Cutrona, Sr. for causing the College's failure to conduct the performance assessment of plaintiff.

Finally, Count V alleges a cause of action against
defendant Salvatore Cutrona, Sr. for tortious interference with
prospective contractual relations by causing the College's
failure to conduct the performance assessment.

STANDARD OF REVIEW

In considering a motion for summary judgment, the court
must determine whether "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue of
material fact and that the moving party is entitled to judgment
as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
Federal Home Loan Mortgage Corporation v. Scottsdale Insurance
Company, 316 F.3d 431, 433 (3d Cir. 2003). Only facts that may
affect the outcome of a case are "material". Moreover, all
reasonable inferences from the record are drawn in favor of the
non-movant. Anderson, supra.

Although the movant has the initial burden of
demonstrating the absence of genuine issues of material fact, the
non-movant must then establish the existence of each element on
which it bears the burden of proof. See Watson v. Eastman Kodak
Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

Plaintiff cannot avert summary judgment with
speculation or by resting on the allegations in his pleadings,

but rather must present competent evidence from which a jury could reasonably find in his favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS

Based upon the pleadings, record papers, depositions, exhibits, and the uncontested concise statement of facts submitted by defendant, the pertinent facts are as follows.

Plaintiff David Stinebeck came to Albright College in May 2002 when he was selected for the position of Provost, Vice President of Academic Affairs and Academic Dean of the College (collectively the "Provost" position).  The terms and conditions of plaintiff's employment as Provost are governed by a one-page employment contract dated January 14, 2002 and effective May 1, 2002 ("the Provost Contract").

The Albright College Personnel Policy Manual, dated September 1, 1995 is expressly incorporated into plaintiff's Provost Contract.  One provision of the personnel manual is that an employee may be terminated if his continued employment is contrary to the best interests of the College.

On February 19, 2004 the 13th President of Albright College was compelled to resign.  On February 20, 2004 the Board of Trustees chose plaintiff to serve as Acting President. Defendant Salvatore Cutrona, Sr., Chairman of the Board of

-5-

Trustees, wrote to the officers of the Board recommending plaintiff as Interim President.  The Executive Committee of the Board approved Mr. Cutrona's recommendation and selected plaintiff as Interim President effective June 1, 2004.

Plaintiff accepted the position.  On August 10, 2004 he signed an employment agreement ("the Interim President Contract") governing the terms of his relationship with the college during his service as Interim President.  Plaintiff advised defendants that he intended to be a candidate for the position of 14th President of Albright College and understood that he might not be selected even though he was serving as Interim President.

Pursuant to the terms of the Interim President Contract, plaintiff's employment would continue until appointment of the 14th President.  If someone other than plaintiff were selected as the new President, plaintiff would return to his former position of Provost, and his contractual term as Provost would be extended for a period equal to the time he spent as both Acting and Interim President.

The Interim President Contract further provided that Albright College and plaintiff would mutually agree upon criteria for conducting an evaluation of plaintiff's performance as Interim President.  The Interim President Contract did not include a deadline for completion the evaluation.  Plaintiff never requested that the evaluation be completed, and there is no

indication in the record that plaintiff and the college ever
agreed upon criteria for conducting an evaluation of his
performance.

On February 21, 2004 the Board of Trustees created an
independent Search Committee to evaluate prospective candidates
and ultimately recommend which candidate should be selected as
the 14th President.  The Search Committee included nine trustees,
three faculty members, two members of the college staff and two
students.  The Search Committee started with a candidate list of
approximately 130 persons and narrowed it to twelve candidates.
The Search Committee interviewed each of the twelve and came up
with three finalists.  On January 31, 2005 plaintiff was notified
that he was not one of the three finalists.

Two of the three finalists withdrew from consideration.
At that time, defendant Cutrona recommended that plaintiff be
included as a finalist and argued on his behalf to the Co-Chairs
of the Search Committee.  However, his recommendation was
rejected.  Moreover, the Board of Trustees accepted the Search
Committee recommendation that plaintiff and any other rejected
candidate not be reconsidered for the position.

Ultimately, Dr. Lex O. McMillan, III, was chosen and
formally assumed the position of 14th President of Albright
College on May 2, 2005.  Concurrently, plaintiff was restored as

Provost of Albright College, took a leave of absence, and moved to Massachusetts.

On July 15, 2005 President McMillan informed plaintiff that he was terminating plaintiff's employment at the end of plaintiff's leave of absence, effective July 31, 2005.  President McMillan terminated Dr. Stinebeck's employment because he concluded it was in the best interests of the College.

PROCEDURAL HISTORY

Because of the issues involved in the disputes concerning res judicata, collateral estoppel, claim preclusion and issue preclusion, it is necessary to set forth in some detail the intertwined procedural history between the parties' Pennsylvania state cause of action (presided over by Judge Scott E. Lash of the Court of Common Pleas of Berks County) and this federal cause of action.

On April 14, 2005 plaintiff filed a Complaint in the Court of Common Pleas of Berks County, Pennsylvania captioned Steinbeck v. Cutrona, case number 05-4864 ("Berks County action").  In that case, plaintiff alleged defamation and tortious interference with prospective contractual relations against Salvatore Cutrona, Sr.

On February 17, 2006 defendant Cutrona filed a Motion for Summary Judgment in the Berks County case.  On March 20, 2006 plaintiff responded to defendant's motion for summary judgment.

-8-

Moreover, that same day, plaintiff filed a Praecipe pursuant to
Rule 229 of the Pennsylvania Rules of Civil Procedure requesting
the Prothonotary of Berks County to discontinue his case without
prejudice.  On March 22, 2006 the Prothonotary of Berks County
discontinued the action.

Approximately six weeks later, on May 3, 2006,
plaintiff filed the within federal action against defendants
Albright College and Salvatore Cutrona, Jr.  On May 26, 2006
Salvatore Cutrona, Sr. filed a Petition to Strike Off
Discontinuance in the Berks County action.  On September 26, 2006
the Berks County action was reopened by Judge Lash

On January 5, 2007 a Rule 16 telephone status
conference was conducted by me with counsel for the parties.
During the telephone conference, counsel for the parties agreed
on a number of issues and to certain deadlines.  Three specific
agreements pertinent to the within motion are that:

> (1) all past and future discovery produced by any
> party in the related state court action currently
> pending in the Court of Common Pleas of Berks
> County, Pennsylvania will be deemed to have been
> produced in this action;
>
> (2) in the event that the currently pending state
> court action is not resolved by the time that
> responses to any motion for summary judgment or
> other dispositive motion are filed and served,
> this case will be placed in civil suspense pending
> resolution of the state court action; and
>
> (3) every sixty days plaintiff's counsel shall
> advise the undersigned concerning the status of
> the state court action.

See January 5, 2007 Rule 16 Status Conference Order (Docket Entry No. 18).

On June 20, 2007 Judge Lash entered a Decision and Order granting defendant's motion for summary judgment.  Judge Lash dismissed plaintiff's claims for tortious interference and defamation.  The defamation claim is of no import to this action, however, the tortious interference claim is.

Judge Lash based his dismissal of plaintiff's tortious interference claim on four separate independent grounds:  (1) the lack of record evidence that Mr. Cutrona interfered with the Interim President Contract or with plaintiff's candidacy for the 14th President of Albright College; (2) the lack of record evidence that Mr. Cutrona caused the performance assessment of plaintiff not to be performed; (3) the lack of record evidence that a performance assessment of plaintiff would have likely resulted in plaintiff's nomination as the 14th President of Albright College; and (4) the fact that Mr. Cutrona was acting not as a third party but as an agent of Albright College at all relevant times.

On July 20, 2007 plaintiff appealed Judge Lash's Decision and Order to the Superior Court of Pennsylvania.  As of the date of this Memorandum and Order neither plaintiff, nor defendants, have advised me that the Superior Court has ruled on

plaintiff's appeal.  On August 29, 2007 Defendants' Joint Motion
for Summary Judgment was filed in this court.

<u>PROCEDURAL BACKGROUND</u>

By my Rule 16 Status Conference Order dated January 5,
2007 any party filing a motion for summary judgment was required
to file a brief, together with "a separate short concise
statement, in numbered paragraphs, of the material facts about
which the moving party contends there is no genuine dispute."
The concise statement of facts was required to be supported by
citations to the record and, where practicable, relevant portions
of the record were to be attached.

In addition, my Order provided that any party opposing
a motion for summary judgment was required to file a brief in
opposition to the motion and "a separate short concise statement,
responding in numbered paragraphs to the moving party's statement
of the material facts about which the opposing party contends
there is a genuine dispute, **with specific citations to the
record**, and, where practicable, attach copies of the relevant
portions of the record." (Emphasis added.)

Moreover, my Order provided that if the moving party
failed to provide a concise statement, the motion may be denied
on that basis alone.  With regard to the opposing party, my Order
provided: "All factual assertions set forth in the moving party's

-11-

statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth [by the court]."

In this case, defendants filed a concise statement of facts in support of their motion.  However, while plaintiff filed opposition to defendants' concise statement, he did not do so in the manner set forth in my January 22, 2003 Order.  Specifically, plaintiff failed to provide specific citations to the record for any counter averment of fact except in paragraph 44 of the Response of Plaintiff Disputing Various Numbered Statements in Defendants' Joint Statement of Undisputed Facts, which response was filed September 18, 2007.

The requirement for a concise statement and a responsive concise statement is consistent with the requirement of Rule 56 of the Federal Rules of Civil Procedure that the moving party provide proof that there are no genuine issues of material fact which would prevent him from being entitled to judgment as a matter of law.  Moreover, in response, the non-moving party (in this case plaintiff) may not rest on his pleadings, but must come forward with competent evidence that demonstrates a genuine issue of material fact.  Ridgewood, supra.

In addition, Rule 83(b) of the Federal Rules of Civil Procedure provides:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district.  No sanction or

other disadvantage may be imposed for
noncompliance with any requirement not in
federal law, federal rules, or local district
rules unless the alleged violator has been
furnished in the particular case with actual
notice of the requirement.

Thus, even if my requirement for a separate concise
statement were not consistent with Rule 56, I gave plaintiff
actual notice of my requirement, and it was clearly not complied
with.

Accordingly, for the purposes of the within motion, I
deem admitted all facts contained in paragraphs 1-43 and 45-57 of
Defendants' Joint Statement of Undisputed Facts filed August 29,
2007.

## PLAINTIFF'S AFFIDAVIT

In support of his opposition to defendants' within
motion, plaintiff submitted a 20-page Affidavit dated
September 14, 2007.  In their reply brief, defendants oppose
consideration by the court of plaintiff's Affidavit because they
allege that the Affidavit relies extensively on inadmissible
hearsay; it is self-serving; contains entirely new facts not
identified at any point in discovery, including during
plaintiff's four-day deposition; and, in part, directly
contradicts plaintiff's deposition testimony.  Defendant further
contends that plaintiff's Affidavit comes squarely within the
"sham affidavit doctrine".

-13-

Plaintiff did not seek permission to file a surreply to plaintiff's reply brief.  Thus, plaintiff has not opposed the defendant's request for the court to disregard the Affidavit. Notwithstanding plaintiff's lack of opposition, for the following reasons I conclude that consideration of plaintiff's September 14, 2007 Affidavit is inappropriate in determining whether there are any genuine issues of material fact in this matter.

In <u>Jiminez v. All American Rathskeller, Inc.</u>, 503 F.3d 247 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit recently analyzed the history and continued applicability of the "sham affidavit doctrine".  In that case, the Third Circuit reiterated that the doctrine is an important tool for judges in "sorting the wheat from the chaff" in determining whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." 503 F.3d at 253.

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment."  <u>Id.</u>

In reviewing plaintiff's affidavit, I conclude that it is partially contradictory of his deposition testimony.

-14-

Moreover, plaintiff's excuse that he was confused by the objections made by his lawyer during his deposition is unpersuasive because plaintiff had the opportunity to review his deposition and could have cleared up any problems long before the within Affidavit was submitted.  Furthermore, I conclude that most of the Affidavit involves information that is collateral to the issues involved in this case, and does not create any issues of fact that are material to this litigation.

In addition, plaintiff's Affidavit is clearly self-serving.  Plaintiff attempts to paint a picture of himself as the best applicant for the position of President and to attempt to create a factual picture, without any factual support, to create illusory factual disputes.

However, as noted by defendants, the Affidavit does not (1) refute the Search Committee's decision that at least three candidates were better qualified than plaintiff; (2) provide evidence that a performance review was ever requested by him; (3) provide evidence that there was a specific date by which it was required to be completed; or (4) refute the testimony and affidavits of other witnesses that the review would have been accomplished at the end of the academic year in conjunction with all other staff reviews.

Self-serving affidavits are generally entitled to little weight and are insufficient to raise genuine issues of

material fact in the absence of other factual support in the
record.  <u>Dyszel v. Marks</u>, 6 F.3d 116, 129 (3d Cir. 1993);
<u>Slowiak v. Land O'Lakes, Inc.</u>, 987 F.2d 1293, 1295 (7th Cir.
1993).

 Finally, plaintiff's Affidavit is rife with hearsay.
"'Hearsay' is a statement, other than one made by the declarant
while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted."  Fed.R.Evid. 801(c).
Hearsay is not admissible except in certain circumstances, none
of which plaintiff has established here.  Fed.R.Evid. 802, 803-
807.

 Throughout his Affidavit, plaintiff explains what
others said to him and about him.  However, plaintiff has not
indicated where any of the statements he attributes to others are
contained in the record.  Pursuant to my January 5, 2007 Rule 16
Status Conference Order and the dictates of Rule 56 of the
Federal Rules of Civil Procedure, it is plaintiff's
responsibility to present the court with competent evidence to
defeat summary judgment.  For all of the reasons set forth above,
the Affidavit submitted here falls considerably short of
providing the court anything useful in defense of the within
motion.  Accordingly, little weight was given above to the
Affidavit in setting forth the facts pertinent to the issues
involved in this case and the within motion.

DISCUSSION

Contentions

Defendants Albright College and Salvatore Cutrona, Sr. contend that certain claims and issues contained in plaintiff's Amended Complaint are precluded or barred by either the doctrine of res judicata (claim preclusion), collateral estoppel (issue preclusion), or both.  Specifically, defendants contend that Counts II, III, IV and V are barred by the doctrine of collateral estoppel and that Count V is also barred by the doctrine of res judicata.  The basis for defendants' contentions are the findings and conclusions contained in the June 20, 2007 Decision and Order of Judge Lash in the Berks County action.

Plaintiff asserts that he has timely appealed Judge Lash's Decision and Order and contends that the Decision and Order are not final until all appeals are exhausted.  Plaintiff does not address defendants' collateral estoppel argument.

For the following reasons, I agree with defendants that Counts II, IV and V are barred by the doctrine of collateral estoppel and that Count V is also barred by the doctrine of res judicata.  However, I disagree with defendants that Count II is barred by collateral estoppel.  Furthermore, I conclude that plaintiff is incorrect.  Judge Lash's Order is a final Order for these purposes notwithstanding plaintiff's appeal of that Order.

-17-

<u>Choice of Law</u>

When determining the preclusive effect of a state-court judgment, the United States Supreme Court has interpreted the "full faith and credit clause", codified in 28 U.S.C. § 1738, to require a federal court to apply the preclusion law of the State in which judgment was rendered.  <u>McNasby v. Crown Cork and Seal Co., Inc.</u>, 888 F.2d 270, 276 (3d Cir. 1989).  Because this judgment was rendered in Pennsylvania, I apply Pennsylvania law.

<u>Res Judicata</u>

Pennsylvania law requires four elements to be identical between two actions in order to invoke the doctrine res judicata. Specifically, the two actions must share an identity of: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued.  <u>O'Leary v. Liberty Mutual Insurance Co.</u>, 923 F.2d 1062 (3d Cir. 1991); <u>McNasby</u>, <u>supra</u>.

Further, there is no bright-line test for determining whether the causes of action in two suits are identical for res judicata purposes.  <u>O'Leary</u>, 923 F.2d at 1065.  Nevertheless, courts have identified several criteria relevant to making such a determination.

The criteria are: (1) whether the acts complained of and the demand for relief are the same, that is, whether the wrong for which redress is sought is the same in both actions;

-18-

(2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same, that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first; and (4) whether the material facts are the same.  O'Leary, supra.

In the Berks County action, plaintiff alleged two state law causes of action against Salvatore Cutrona, Sr., defamation and tortious interference with prospective contractual relations. The defamation claim is of no import to this motion.  However, the tortious interference with prospective contractual relations claim is at issue in this case.

Specifically, in the Berks County action before Judge Lash, plaintiff alleged that defendant Cutrona interfered with his prospective contract as the 14th President of Albright College by preventing the performance assessment contemplated in his Interim President Contract from being performed.  In Count V of the within action plaintiff makes the same exact claim against defendant Cutrona.

Based upon the explanation of plaintiff's claim in Judge Lash's Decision and Order in the Berks County case and a review of plaintiff's Amended Complaint in this matter, I conclude that the thing sued upon or for, the cause of action, the persons and parties to the action and the capacity of the

parties to sue or be sued are all identical in both action. O'Leary, supra.

Moreover, looking at the four criteria established by the Third Circuit in O'Leary, it is equally clear from the record that the wrong for which redress is sought is the same in both actions, the theory of recovery is the same, the witnesses and documents necessary at trial are the same and the material facts of both actions are the same.

The parties to both actions are the same.  The wrong asserted, interference with prospective contractual relations by Mr. Cutrona by preventing the performance assessment, is exactly the same in both actions.  By my January 5, 2007 Rule 16 Status Conference Order, all discovery in the Berks County action was deemed to be produced in this action.  Defendant contends, without opposition, that no additional discovery was taken in this case, outside of the discovery taken in the Berks County action.  Thus, the witnesses and documents and the material facts of both actions are the same.

Therefore, Judge Lash's June 20, 2007 Decision and Order constitutes a final judgment that bars plaintiff's re-litigation of the exact claim in this court under the doctrine of res judicata.  Accordingly, I grant defendants' motion for summary judgment regarding Count V of plaintiff's Amended Complaint.

<u>Collateral Estoppel</u>

As noted above, defendant seeks summary judgment on Counts II, III, IV and V of plaintiff's Amended Complaint based upon the doctrine of collateral estoppel.  Count III involves a claim for breach of contract, and Counts II, IV and V involve claims for tortious interference with current or prospective contractual relations.

Pennsylvania law adopts the requirements of the Restatement (Second) of Judgments and recognizes the preclusive effect of collateral estoppel.  <u>O'Leary</u>, <u>supra</u>.  Further, Pennsylvania law maintains that a prior determination of a legal issue is conclusive in a subsequent action where the following five elements are met: (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a valid, final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action; and (5) the determination in the prior proceeding was essential to the judgment.  <u>City of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh</u>, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989); <u>Rue v. K-Mart Corporation</u>, 552 Pa. 13, 17, 713 A.2d 82, 84 (1998).

A judgment is valid when it has been rendered by a court of competent jurisdiction and when the party against whom judgment is rendered either has submitted to the jurisdiction of the court or has been afforded adequate notice.  Although the parties may have unexhausted avenues of direct appeal in state court, this does not undermine the finality of the judgment for the purpose of collateral estoppel.  O'Leary, 923 F.2d at 1066, n.6.  "An issue is actually litigated when it is properly raised by the pleadings or otherwise, and is submitted for determination, and it is determined."  O'Leary, 923 F.2d at 1066, (quoting Restatement (Second) of Judgments, § 27, comment d, at 255 (1982)).

The elements needed to satisfy liability under Pennsylvania law for tortious interference with contract, existing or prospective are as follows: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third-party; (2) purposeful action by the defendant specifically intended to harm the existing relation or to prevent a prospective relation from occurring; (3) absence of privilege or justification on the part of the defendant; and (4) actual legal damage as a result of defendant's conduct. Crivelli v. General Motors Corporation, 215 F.3d 386, 394 (3d Cir. 2000) (citing Strickland v. University of Scranton, 700 A.2d 979, 985 (Pa.Super. 1997)).

In addition to the foregoing elements, when the claim is one for interference with a prospective business relationship, as opposed to one currently existing, plaintiff must establish a reasonable likelihood or probability that the anticipated business relationship will be consummated.  Behrend v. The Bell Telephone Company of Pennsylvania, 242 Pa.Super. 47, 60-62, 363 A.2d 1152, 1159-1160 (Pa.Super. 1976), vacated on other grounds by 473 Pa. 320, 374 A.2d 536 (Pa. 1977).

The elements needed to establish liability for breach of contract pursuant to Pennsylvania law are (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages.  Williams v. Nationwide Mutual Insurance Company, 750 A.2d 881, 884 (Pa.Super. 2000).

In the Berks County case, Judge Lash based his dismissal of plaintiff's tortious interference claim on four separate independent grounds:  (1) the lack of record evidence that Mr. Cutrona interfered with the Interim President Contract or with plaintiff's candidacy for the position of 14th President of Albright College; (2) the lack of record evidence that Mr. Cutrona caused the performance assessment of plaintiff not to be performed;  (3) the lack of record evidence that a performance assessment of plaintiff would have likely resulted in plaintiff's nomination as the 14th President of Albright College; and (4) the

-23-

fact that Mr. Cutrona was acting not as a third party, but as an
agent of Albright College at all relevant times.

Counts II, IV and V of plaintiff's Amended Complaint
are claims for tortious interference with contract, existing or
prospective, against defendant Cutrona.  All three causes of
action include an element that a contractual, or prospective
contractual, relation exists between the complainant and a third-
party.  Judge Lash determined that Mr. Cutrona was acting not as
a third party but as an agent of Albright College at all relevant
times.  Thus, Judge Lash determined that any inducement by Mr.
Cutrona to cause Albright College not to perform any contract
with plaintiff cannot be considered interference by one who is
not a party to the contract.

In applying the factors required for collateral
estoppel, the issue decided by Judge Lash is identical to one
presented in this action; the Berks County case resulted in a
valid, final judgment on the merits; the party against whom
collateral estoppel is asserted (i.e. plaintiff) was a party to
the prior action; plaintiff had a full and fair opportunity to
litigate the issue in the Berks County action; and Judge Lash's
determination in the Berks County case was essential to the
judgment entered.  _____

Thus, I conclude that regarding Counts II, IV and V
defendant has satisfied all the elements of issue preclusion.

See City of Pittsburgh, supra.  Because of Mr. Cutrona's legal status as an agent of the College, plaintiff is unable to prove that Mr. Cutrona interfered with either an existing or prospective contract.  Therefore, plaintiff cannot satisfy all the elements of the causes of action in Counts II, IV and V.  Accordingly, I grant defendants' motion for summary judgment on Counts II, IV and V and dismiss them from plaintiff's Amended Complaint.[1]

Count III is a claim for breach of contract against Albright College for failing to conduct a performance assessment of plaintiff.  Defendant contends that the issue of the performance assessment was litigated in the Berks County case for purposes of precluding Count III.  Specifically, defendants argue that Judge Lash determined that the lack of a timely performance evaluation did not impact plaintiff's candidacy as the 14th President; and thus, plaintiff is unable to establish resultant damages in his breach of contract action in this case.  I disagree.

The issue decided in the Berks County action is not identical to one presented in this action.  Judge Lash determined

---

[1]   I note that I would also grant defendants' motion for summary judgment on the merits regarding Counts II, IV and V.  Specifically, I agree with, and adopt the reasoning and analysis of, both the June 20, 2007 Decision and Order of Judge Lash in the Berks County case and that contained in the Memorandum of Law in Support of Defendants' Joint Motion for Summary Judgment.  More specifically, I conclude that defendant Cutrona was an agent of Albright College and that plaintiff has produced no record evidence that Mr. Cutrona interfered in any way with his existing or prospective contracts with the College.

that the record there did not establish that if a performance assessment had been submitted in a timely manner to the Search Committee, this would have likely resulted in plaintiff's nomination as the 14th President.  This conclusion was made in the context of whether there was a reasonable likelihood or probability that plaintiff's future business arrangement would be consummated as an element of his claim for tortious interference with a prospective contract, not in the context of resulting damages from a breach of contract, which is the claim at issue here.

        Because I conclude that there is not an identity of issues, I conclude that application of the doctrine of collateral estoppel is not appropriate on this claim, and no further discussion of the other factors is necessary.

                    Breach of Employment Contract

        Count I of plaintiff's Amended Complaint asserts a cause of action for breach of contract against defendant Albright College for termination of his employment as Provost, Vice President of Academic Affairs, and Academic Dean.  Plaintiff asserts that his termination breached the Interim President Contract signed August 10, 2004.  Specifically, plaintiff contends that pursuant to the Interim President Contract, he was entitled to an extension of his term as Provost for a period of time equal to the time he served as Acting and Interim President

of Albright College in the event that he was not chosen as the 14th President of the College.

Defendant Albright College contends that it had the right to terminate plaintiff under his Provost contract if it concluded that it was in the best interests of the College. Because I conclude that application of the two contracts creates ambiguities regarding the rights and duties under the contract, and that these ambiguities must be resolved by a jury, I conclude that summary judgment regarding Count I is inappropriate.

Under the Pennsylvania common law of contracts, "a writing must be interpreted as a whole, giving effect to all its provisions." Atlantic Richfield Company v. Razumic, 480 Pa. 366, 372, 390 A.2d 736, 739 (1978). "Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." Huegel v. Mifflin Construction Company, Inc., 796 A.2d 350, 354-355 (Pa.Super. 2002)(internal citation and quotations omitted).

A court may not interpret one aspect of a contract in a manner that annuls another part of the contract. Meeting House Lane, Ltd. v. Melso, 628 A.2d 854, 857-858 (Pa.Super. 1993). Moreover, "[i]t is well settled that before a court may interpret a contract in such a way as to reach an absurd result, it must

endeavor to reach an interpretation that is reasonable in light of the parties' intentions." Empire Sanitary Landfill, Inc. v. Riverside School District, 739 A.2d 651, 655 (Pa.Commw. 1999) (citing Pocono Manor Association v. Allen, 337 Pa. 442, 12 A.2d 32 (1940)).

"The intent of the parties to a written contract is deemed to be in the writing itself, and when the words are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement". Delaware County v. Delaware County Prison Employees Independent Union, 552 Pa. 184, 189, 713 A.2d 1135, 1137 (1998)(internal citation omitted). "[T]he focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." Steuart v. McChesney, 498 Pa. 45, 49, 444 A.2d 659, 661 (1982)(emphasis in original).

In order to construe the meaning of a contract under Pennsylvania common law, the court must make a threshold determination whether the contract contains an ambiguity. Steuart, supra. The court interprets, as a matter of law, the terms of the contract insofar as they are clear. The court also determines the existence of any ambiguity.

If an ambiguity is found, "the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact."

Hutchison v. Sunbeam Coal Corporation, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986).  As a general rule, where the language of a contract is ambiguous and two logical interpretations of the provision are offered, the ambiguous provision is construed against the drafting party.  Profit Wize Marketing v. Wiest, 812 A.2d 1270, 1274 (Pa.Super. 2002).

Pennsylvania law defines a contract as "ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."  Kripp v. Kripp, 578 Pa. 82, 91, 849 A.2d 1159, 1163 (2004).  To determine the existence of ambiguity, the court may consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning."  Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980).  The disagreement of the parties regarding the proper construction of an agreement does not alone render an agreement ambiguous.  Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001)(Becker, C.J.).

Pennsylvania law recognizes both patent and latent ambiguities.  A patent ambiguity is created by the language of the instrument and appears on its face.  Insurance Adjustment Bureau, supra.  A latent ambiguity arises from "extraneous or collateral facts which make the meaning of a written agreement

uncertain although the language thereof, on its face, appears clear and unambiguous." Bohler-Uddeholm America, Inc., 247 F.3d at 93 (reviewing Pennsylvania contract law).

A latent ambiguity may also arise "through silence or indefiniteness of expression." Crown, Cork & Seal Company, Inc. v. Employers Insurance of Wausau, 2002 WL 31164702, at *2 n.1 (E.D.Pa. September 27, 2002)(Waldman, J.).  Finally, a latent ambiguity may arise "when the plain meaning interpretation of the contract would lead to an absurd and unreasonable outcome." Bohler-Uddeholm America, Inc., 247 F.3d at 96.

In this case, the ambiguities arise from the silence of the parties.  Specifically, plaintiff's Interim President Contract provides an extended term if he returns to the former position as Provost as a result of not being selected for the position of 14th President of Albright College.  It further provides that the salary that plaintiff would receive would be equal to "a salary that would reflect any adjustments or salary increases that would be provided had the Interim President continued as Provost and Vice President for Academic Affairs."[2]

Plaintiff's Interim President Contract contained a Involuntary Termination clause that provided for six months severance pay in the event he was involuntarily terminated while

---

[2]      See Appendix of Exhibits in Support of Defendants' Joint Motion for Summary Judgment, Exhibit 11 (Interim President Employment dated August 10, 2004) page 7, Section 4.19.

serving as Interim President.  Moreover, plaintiff's original
Provost Contract contained a similar severance clause applicable
if he were terminated within the first three years of his
employment.

Plaintiff did not resume his Provost position until
May 2, 2005, exactly one day after expiration of the original
three-year Provost Contract.  The Interim President Contract does
not mention any other terms for plaintiff's return to the Provost
position except for the minimum length (the time served as Acting
and Interim President) and the salary.  It does not specifically
incorporate any of the other terms of the Provost Contract.
Plaintiff contends that the Provost Contract was superseded by
the Interim President Contract.

Defendant relies on provisions in the Provost Contract
incorporating the Albright College Personnel Manual in support of
its termination of plaintiff's employment, specifically, the
right of the College to fire employees in the best interest of
the College.

Because there are only two terms specifically set forth
in the Interim President Contract, there is ambiguity regarding
any agreement between the parties concerning the applicability of
the Albright College Personnel Manual; the power of the President
to fire plaintiff, and under what circumstances; the amount of
compensation, if any, to which plaintiff is entitled if fired;

and any rights or obligations plaintiff had to appeal the decision or file suit.  These potential terms are all latent ambiguities of the agreement between the parties.

As noted above, if an ambiguity were found, "the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact."  <u>Hutchison</u>, <u>supra</u>.  Accordingly, because I conclude there are numerous ambiguities, thus, numerous genuine issues of material fact present regarding Count I, I deny defendants' motion for summary judgment regarding Count I.

<u>Performance Assessment</u>

Count III of plaintiff's Amended Complaint is a cause of action for breach of contract based upon Albright College's failure to perform a performance assessment of plaintiff regarding his performance as Interim President.  The applicable section of the Interim President Contract is Section 5.01.  This section provides:

**Section 5.01 <u>Performance Evaluation</u>**

Albright College and Interim President shall mutually agree upon criteria for evaluating Interim President's performance.

Although from time to time input on Interim President's performance may be sought from the broader college community, the actual performance assessment shall be conducted in private session(s) limited to the Officers of the Board of Trustees and members of the Board's Executive Committee.  At such session(s), the assessment of performance shall be discussed with the Interim

> President, and goals shall be approved for this
> interim period.  An evaluation instrument or
> format may be utilized by Albright College at its
> discretion.  Each judgment made shall be supported
> by reasonable and objective evidence.

Appendix Exhibit 11 at page 7.

Plaintiff contends that he should have been given a performance evaluation early enough that the Selection Committee would be able to consider that information in their search for a new President.  Moreover, plaintiff asserts that the College's failure to provide him with this performance assessment resulted in his not being nominated as the 14th President of Albright College.

Defendant Albright College contends that it intended to conduct a performance assessment at the end of the 2004-2005 academic year, the time of the year when it usually reviews all employees.  Moreover, the College asserts that the Interim President Contract does not provide a time to conduct such an evaluation and that plaintiff never requested that one be conducted.

Defendant College further contends that plaintiff was not harmed in any way by not having a performance assessment presented to the Selection Committee because plaintiff had every opportunity during his interview with the Selection Committee to tout and advance any of his accomplishments as Interim President.

As noted above, the elements needed to establish liability for breach of contract are (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. <u>Williams</u>, 750 A.2d at 884.  In this case, plaintiff has identified a contract including the essential term that the College will conduct a performance assessment.  However, plaintiff has identified no evidence that defendant Albright College has breached a duty imposed by the contract.  Specifically, while the contract does require a performance assessment, it does not set a time for the completion of the performance assessment.

Thus, plaintiff cannot show that the College had any duty to perform a performance assessment early in his tenure as Interim President so that the assessment could be presented to the Selection Committee in furtherance of his candidacy for the permanent Presidency.  Moreover, plaintiff provides no evidence to refute defendants' assertion that the College had every intention to conduct a performance assessment at the end of the academic year and would have done so if he had not taken a leave of absence.

Finally, plaintiff has not shown any resultant damage from the failure to perform a performance assessment. Plaintiff's only "evidence" of damages is his subjective, unsupported belief that if a performance assessment of his tenure

as Interim President was presented to the Selection Committee that somehow would have aided his candidacy.

In this regard, plaintiff's contention is no different than the allegations in his Amended Complaint.  In essence, plaintiff wants to proceed on nothing more than his personal opinion and feelings.

Plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor.  <u>Ridgewood</u>, 172 F.3d at 252.  Thus, because plaintiff has provided no competent evidence from which a jury could reasonably find in his favor, plaintiff fails to meet his burden.

Accordingly, I grant defendants' motion for summary judgment on Count III of plaintiff's Amended Complaint.

<u>CONCLUSION</u>

For all the foregoing reasons, I grant Defendants' Joint Motion for Summary Judgment on Counts II, III, IV and V of plaintiff's Amended Complaint and deny defendant's motion for summary judgment on Count I.